## CROOK VS. HENRY.

*Divorced wife as witness in action against former husband.*

After a divorce, the former wife is a competent witness, in replevin by the husband against a third person, to show that she was authorized by plaintiff to sell, and did sell, the property in dispute.

APPEAL from the Circuit Court for *Vernon* County.

Replevin. Defendant claimed under a sale made to him by Mrs. Crook, who was then plaintiff's wife, but had since been divorced from him. Mrs. Crook was sworn as a witness for the defense, but the court refused to allow her to testify whether she was authorized by her husband to sell the property, or whether he assented to the sale, or what disposition was made of the money received by her for the property. Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Carson Graham*, for appellant, cited *Dickerman v. Graves*, 6 Cush. 308; *Ratcliff v. Wales*, 1 Hill, 63; *Beveridge v. Minter*, 1 Carr. & Payne, 364; *Littlefield v. Rice*, 10 Met. 287; *Stanton v. Willson*, 3 Day, 37; *Merriam v. R. R. Co.*, 20 Conn. 354; *Manchester v. Manchester*, 24 Vt. 649.

*C. M. Butt* (with *P. L. & J. C. Spooner*, of counsel), for respondent:

After a dissolution of the marriage, the wife is not permitted to give evidence as to matters occurring during the marriage, which would have been excluded if the marriage had continued. 1 Phillips on Ev. 78; 1 Greenl. Ev. § 337. The rule is not confined to confidential communications. 1 Phillips, 79; 4 Mann. & Gr. 443. If the husband makes the wife his agent, her declarations or admissions in the course of the agency are receivable like those of any other agent; but she cannot be called to prove the

fact of her agency. 1 Phillips, 93; 4 Mann. & Gr. 335. In *Littlefield v. Rice* the court expressly states that it did not intend to decide that the wife could be called by the opposite party.

COLE, J.   Was the defendant entitled to prove by Mrs. Crook that she was authorized by her husband to sell the property in controversy; or that he assented to the sale made by her? This is the point principally discussed upon the argument, and it must be confessed that the rule excluding her testimony is sustained by high authority.   But, nevertheless, under the circumstances, we are inclined to hold that the evidence was admissible.

The action was to recover the possession of a cow, five pigs, a cook stove and some other articles of household property, worth about $66.   It appears that the plaintiff left his wife in Vernon county in the fall of 1866, and went to Illinois to work.   He returned home in March following.   This property was left in charge of his wife, and while he was absent she sold it to the defendant, and received the price agreed upon therefor.   At the time of the trial, the witness, Mrs. Crook, had been divorced, and it will be seen she was called against her former husband to testify as to a transaction which occurred during coverture.   Was her testimony admissible?

On the part of the counsel for the defendant it is claimed that it is.   He insists that the exclusion of the testimony sought to be elicited cannot be sustained upon the usual ground that it would be disclosing a confidential communication between husband and wife.   The communication, it is said, was not confidential, but the fact whether she was authorized by her husband to make the sale was of a character which must have been intended for the public; that is, if the husband had constituted her his agent to make the sale, he must have intended that she should communicate that fact to the purchaser.   There is, then, no violation of confidence in allowing her to testify

whether she was authorized by her husband to sell the property, since she will only disclose what he must have intended should be known by the public.

It seems to us that this reasoning is sound. We are obliged to make our election between conflicting authorities. And we therefore have concluded to hold that when the relation of husband and wife has ceased, as by a divorce, the former wife may be admitted as a witness against the former husband to prove a communication not confidential, but which must have been intended by the husband that she should make known to the public when he made it to her. It is a familiar rule, that when the agency of the wife is proven *aliunde*, you may give her acts and declarations in evidence against the husband; but some of the authorities hold that you cannot prove this agency by the wife. The leading case in the English reports on this subject is that of *O'Connor v. Marjoribanks*, 4 Mann. & Gran. 435 (43 Eng. C. Law, 228). That was an action of trover by the personal representatives of A.; and it was held that his widow was not admissible as a witness on the part of the defendants for the purpose of showing that she, by her husband's authority, pledged the goods with them. If the doctrine of this case is to be adopted as laying down the correct rule, then undoubtedly Mrs. Crook could not be called as a witness to prove that she was authorized by her husband to sell the property, because if the widow would not be permitted to testify to that fact, it is difficult to perceive any valid reason why the divorced wife should be. Indeed, so far as the authorities make a distinction in the cases — if any in fact is made — they seem rather to reject the evidence of the divorced witness, when perhaps the widow might be held competent. *Cook v. Grange*, 18 Ohio, 526; *Stober v. McCarter*, 4 Ohio St. 513; *McGuire v. Malony*, 1 Ben. Monroe, 224. There is, however, abundant authority for holding that the wife, after the

death of the husband, was competent to prove facts coming to her knowledge from other sources and not by means of her situation as wife, notwithstanding they related to the transactions of her husband. 1 Greenl. Ev. § 338. In *McGuire v. Malony* and *Stober v. Mc-Carter*, a number of cases are reviewed, and the courts of Kentucky and Ohio reach the same result in considering what it is competent to prove by the wife after the termination of coverture. In the former case, Judge MARSHALL, after referring to the rule of law which will not permit, even after the death of the husband, any disclosure by the wife which seems to violate the confidence reposed in her as a wife, lest such permission might tend to impair the harmony of the marriage state, and to affect injuriously the interests of society dependent upon it, says: "But where there is not even a seeming confidence, where the act done or declaration made by the husband, so far from being private or confidential, is designedly public at the time, and from its nature must have been intended to be afterward public, there is no interest of the marriage relation or of society which, in the absence of all interest of the husband or wife, requires the latter to be precluded from testifying between other parties, such act or declaration not affecting the character or person of the husband."

We are disposed to go still further, and say that after the relation of coverture has ceased, the divorced wife is competent to prove a communication not private or confidential, but which, from the nature of the case, the husband must have intended should be made public. If he constitutes her his agent to act for him in selling his property, what valid reason is there against her testifying to that fact after the marriage is dissolved? He certainly could not intend that she should conceal from the public the fact that she was his agent, as that would defeat the very end he had in view in authorizing her

to act for him. He knows she will communicate, and must communicate, to parties dealing with her, the fact that he has made her his agent; and there does not seem to be any ground for excluding her as a witness when offered to prove the same fact after she has been divorced. *Smith v. Potter*, 26 Vt. 306. See also *Ryan v. Follansbee*, 47 N. H. 100.

The decisions made elsewhere upon this subject do not harmonize, or settle any well-defined principle, and we are therefore at liberty to adopt that rule which seems to us most rational, and which will best secure the ends of justice.

We think, therefore, that the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.* — So ordered.