ANGEL CESTERO, Plaintiff and Appellee, *v.* HEIRS OF EDUARDO CESTERO, Defendants and Appellants.

No. 3781.   Argued February 10, 1926.—Decided July 29, 1926.

*Rafael Rivera Zayas* and *Juan B. Soto* for the appellants.   *Acuña & Janer* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendants assign error in permitting evidence of a transaction with a person since deceased in violation of law.

The defendants did not appear at the trial and Angel Cestero was permitted to testify that he had loaned $1,000 to his brother Eduardo Cestero, since deceased.

In *Wilcox* v. *Axtmayer,* 23 P.R.R. 319, this court held that section 3 of the Act of 1904 was not repealed by the

General Law of Evidence passed in 1905. Section 3 reads as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this section shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Many of the United States contain similar provisions and they have been strictly applied to limit the exclusion of testimony. This court has cited *Wilcox* v. *Axtmayer* in *Freyre* v. *Succession of Sevillano*, 28 P.R.R. 367, and in *Saunnión* v. *Díaz*, 29 P.R.R. 572. There we said: "The appellant maintains that in accordance with the law as construed by this court in the case of *Wilcox* v. *Axtmayer,* etc., the testimony of the plaintiff and of Garau, in so far as it referred to statements made by Palés, who was dead when the action was brought, was inadmissible in evidence. The record shows that no objection was made by the defendant to the testimony of the plaintiff and of Garau when they referred to the acts and statements of Palés in connection with the said contract. The question is raised for the first time in this court."

The case of *Wilcox* v. *Axtmayer* was also cited in *García* v. *Santos,* 29 P.R.R. 820. In none of these cases was the doctrine of *Wilcox* v. *Axtmayer* applied, but for varying reasons.

The appellants in their brief say:

"And it can not be argued that the testimony of Angel Cestero was admitted because the adverse party was not present to oppose the same, since the testimony of an incapacitated witness is null and void and need not be opposed by the adverse party as the question involved is not of admissibility alone, but also of competency to testify, that is, of a person's capacity to act as a witness."

■■ The appellants are mistaken in supposing that the incompetency of a witness under section 3 of the Act of 1904 is an absolute one. The statute itself shows that it may readily be waived if the witness is called by the opposite side, and the decisions generally show that this class of incompetency, like hearsay, the statute of frauds and other numerous grounds of incompetency, can be waived.

The first case in this jurisdiction to decide that incompetent evidence may be waived was *Falero* v. *Falero,* 15 P.R.R. 111.

*People* v. *Ascencio,* 16 P.R.R. 337, decided in a criminal case that hearsay evidence was admissible if not objected to, citing *Falero* v. *Falero, supra.* Similarly in *People* v. *Silva,* 17 P.R.R. 577. In *Suris* v. *Quiñones,* 17 P.R.R. 614, 643, the objection was that the signatures to a private document were false, but as no other objection was made the court admitted the document.

In *Coto* v. *Rafas,* 18 P.R.R. 493, we said, citing the principal case, that it was a principle.óf law that any probatory testimony would be considered by the court if no objection was made to its admission. Similarly in *People* v. *Jesús,* 18 P.R.R. 575. *Heirs of Martínez* v. *Fernández,* 19 P.R.R. 136, was a suit where the principle was applied in a matter of oral evidence inadmissible perhaps if objected to. Similarly oral evidence was given in *Robles* v. *Robles,* 19 P.R.R. 416, and *Falero* v. *Falero, supra,* was cited. *Rodríguez* v. *P. R. Railway, Light & P. Co.,* 19 P.R.R. 613, was another instance of alleged hearsay where some of the previous decisions were cited.

*Príncipe* v. *American R. R. Co. of P. R.,* 22 P.R.R. 282, was a case where the objection made on appeal was to secondary evidence. *People* v. *Alsina,* 22 P.R.R. 426, decided that objections to secondary evidence could not be raised on appeal. In *Assise* v. *Curet,* 22 P.R.R. 518, objection to a birth certificate by oral testimony was considered waived, not being raised in the court below.

In *Maymón* v. *Victoria & Co.*, 25 P.R.R. 179, it is said on page 182:

"While it is true that no written contract was introduced at the trial, there was oral evidence of the contractual conditions, to the admission of which the defendant made no objection; and it is known that—

" 'It is a principle of law that any probatory evidence may be considered by the court, if no objection to the introduction thereof is made. *Burton* v. *Driggs*, 20 Wall. 133; *District of Columbia* v. *Woodbury*, 136 U.S. 450, 462; *Patrick* v. *Graham*, 132 U.S. 627; *Coinden* v. *Doremus*, 3 How. 515. This is an application of the maxim *Concensus tollit errorem.*' "

This case was cited by the appellee.

*Ibáñez* v. *Divino*, 25 P.R.R. 279, is to the effect that objections must be duly made, and contains a longer citation from *Falero* v. *Falero, supra*. Similar statements can be found in *Alcaide* v. *Alcaide*, 25 P.R.R. 286; *Succession of del Rosario* v. *Rosaly*, 27 P.R.R. 98; *People* v. *Ríos*, 30 P.R.R. 109, and *People* v. *Ruiz*, 31 P.R.R. 297.

Some equivocal expressions may be found in some of the California cases, but in *Kinley* v. *Largent*, 187 Cal. 71, 200 Pac. 937, it is said, referring to disqualifications of a witness by reason of transaction with the deceased: "In some of the cases language is used which might indicate that the incompetency was absolute. Thus in *Rose* v. *Southern Trust Co.*, 178 Cal. 580, 174 Pac. 28, it is remarked that such a witness must not testify, but it was shown by the court that in the latter case an objection was made at the trial, the question of waiver not presented and the case was distinguished.

The jurisprudence is almost uniform that if a party sits by and permits evidence of transactions with a deceased to go before the court or the jury without objection the alleged incompetency is waived. In 40 Cyc. 2349, notes 61 and 62, the text was "It is incumbent upon the party seeking to take advantage of the incompetency of a witness to interpose an objection on that ground, in the absence of which

the objection is deemed waived and the witness is allowed to testify.''

*Secor* v. *Siver*, 161 N. W. 769, was a case in which a statute like the present one was invoked and the court held that objection to the incompetency must be made specific and that an objection to the evidence did not raise questions of incompetency of the witness and that if objection was made on one ground another could not be made on appeal. Likewise, that a party by cross-examination into a field not covered by the direct examination might waive the objection. In *Bland* v. *Beasley*, 76 S. E. 50, it was said that the objection to incompetency must be specific, and in *Hathaway* v. *Cook*, 258 Ill. 92, the court held that objection could not be made on appeal, especially when most of the testimony was brought out on cross-examination.

Similarly in *Haslam* v. *Perry*, 98 Atl. 812, the court held that if seasonably objected to the testimony would have been inadmissible. *Cook* v. *Lane*, 84 Atl. 864, decided that a general objection to testimony waived the objection to witness's competency and that the failure to object to such competency made the witness competent through the trial even at a subsequent hearing.

*Farias* v. *Sulas* (Tex.), 244 S. W. 1115, holds that appellant made no objection to the testimony of the appellee as to transactions and conversations she had with Benavides, the deceased, and of course the testimony must be considered as competent and legal. *Reynolds* v. *Reynolds* (Tex. Civ. App.), 224 S. W. 382.

*Hale* v. *Hale*, 224 S. W. 1078; *Harwood* v. *Hunt*, 191 N. W. 19; *In re Wood's Estate*, Appeal of Gregg, 115 Atl. 865, all decided that the privilege may be waived by not objecting.

Under the heading of the Statute of Frauds, 27 C. J. 373, it is said: ''And it is too late after verdict to object that the contract sued on was proved by oral testimony when the statute requires it to be in writing.'' The Statute

of Frauds is a rule of evidence and may be waived by failure to object. *Taplin* v. *Hinckley Fibre Co.* (Vt.), 122 Atl. 426; *De Proy* v. *Progakis* (Tex.), 259 S. W. 620.

The case of *Wilcox* v. *Axtmayer, supra,* itself is authority that section 3 of the Act of March 10, 1904, is a rule of evidence as being *in pari materia,* and the case of *Saunnión* v. *Díaz, supra,* shows that the objection may be waived.

*Hoag* v. *Wright,* 63 L.R.A. 163, says:

"The objection interposed, however, did not challenge the competency of the witness, but the competency of the evidence; whereas the evidence was competent, but the witness was not. While an objection to the competency of a witness need not refer specifically to the section of the Code which renders him incompetent, it is necessary to raise the question in some way which makes the intention clear. An objection that the witness is incompetent or interested would perhaps be sufficient, but the simple objection that the evidence is incompetent is not specific enough to justify a reversal. (Citations.) In all the cases to which our attention has been called where the reversal was founded upon sec. 829, the objections were so full and clear as necessarily to bring before the minds of the court and the opposing counsel the distinct ground relied upon. Fair practice requires this, so that the court may rule intelligently, and counsel may be advised of the risk they are taking, and act accordingly. (Citations.)"

The principal fact that distinguishes the present case from the mass of jurisprudence that objections must be made in the court below is that the defendants were not present at the trial. We have so far been able to find no case which touches upon the question of incompetent evidence admitted in the absence of a party who would have had a right to object if present. It would, however, seem logical and a matter *a fortiori* that if a defendant fails to appear at a trial he waives any right to object to incompetent evidence. There are numerous cases that have decided that the objection to testimony as incompetent, because it relates to a transaction or conversation with the deceased, can not be raised for the first time on appeal. *H. Herman Sawmill Co.*

v. *Bailey,* 58 S. W. 449; *McElroy* v. *Barkley,* 58 S. W. 406; *Brown* v. *Johnson,* 77 N. W. 900, and many more. Otherwise it is evident that a party by absenting himself from the trial might gain an advantage.

In 3 C. J. 689, it is said: "Subject to few exceptions, which will be noticed hereafter, the rule is of almost universal application that questions of whatever nature not raised and properly preserved for review in a trial court will not be noticed on appeal." The exceptions referred to do not affect the matter before us.

Some mention is made in the brief of the appellants that by some inadvertence of the counsel for the appellants the said counsel did not realize that the case would be called for trial. Nevertheless, the record does not disclose that any motion was made to the court below to open the trial and give the defendants an opportunity to be heard. If such a motion were directed to the discretion of the court the moving party should file an affidavit of merits wherein it was stated on behalf of the heirs that they believed the claim of the plaintiff to be an inequitable or unconscionable one. In other words, that in order to avail oneself of the technicality of the statute the defendant should show that he has a meritorious defense, once he has suffered a judgment to go against him by his own default.

Our principal holding in this case is that by not appearing at the trial the defendants waived any question of incompetency and that the complainant had a right to introduce any evidence that was material and relevant.

At the hearing of a case in which a defendant does not appear the court has a wide discretion and presumably always exercises it in a manner to be convinced that the complainant has a meritorious cause of action. If the judge believes a witness when he says, "I loaned my brother $1,000," he is not bound to cross-examine the said witness to discover the date, form and mode in which the loan was made. In any trial, with competent counsel present, much

testimony absolutely incompetent is permitted to go in, because counsel know that, if objection were made, the due evidence would be produced. To object, then, is only to take up the time of the court. In the absence of counsel for a defendant the court is not bound to be overcritical and may admit even incompetent evidence if satisfied that it is a true reflection of the facts of the case.

Once it is conceded that incompetent evidence may be admitted, if no objection is made, the complainant made out a case on his own declaration alone. He said, ''I loaned my brother $1,000,'' and further testified that the money loaned had never been repaid. For a man in general to state that he loaned another $1,000, is to state the ultimate fact. The statement, barring the incompetency we have been discussing, is not objectionable on any ground. After testifying about the loan the complainant could have rested his case.

He did not do so. He introduced another witness who was not incompetent to speak of transactions with the deceased who testified that the complainant had given him $1,000 to be turned over to Eduardo Cestero; that he had deposited the same and that he had delivered the money to Eduardo Cestero by means of a check on the Banco Comercial de Bayamón; that he did not have the check because he moved from Bayamón, where he was then living, to Río Grande.

The court heard this declaration and was evidently completely satisfied that Eduardo Cestero received the $1,000. ▋ Doubts have been raised whether the delivery of the money has been proved. Section 1138 of the Civil Code has been invoked as follows:

''Payments of debts of money shall be made in the specie stipulated and, should it not be possible to deliver the specie, in legal silver or gold coin current in Porto Rico.

''The delivery of promissory notes to order or drafts or other commercial paper shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected.

"In the meantime the action arising from the original obligation shall be suspended."

This section does not seem to us to be so much a rule of evidence as one of substantive law. Is a debt discharged by the mere delivery of a promissory note or a check? What has been a debatable question in the courts of the United States is definitely settled by the Code. The mere delivery of a check does not discharge the debt. Nevertheless, we maintain that the delivery of a check, if no due objection is made, is prima facie proof not only of a loan but of payment.

Paragraph 13 of section 102 of the Law of Evidence also has some force, spiritually if not literally, as follows:

"Sec. 102. All other presumptions are satisfactory if uncontradicted. * * * The following are of that kind: * * *

"13. That a person in possession of an order on himself for the payment of money, or the delivery of a thing, has paid the money or delivered the thing, accordingly."

The evidence was unquestioned that Angel Cestero had delivered $1,000 to Rafael Ramírez to be turned over to Eduardo Cestero. Rafael Ramírez had in effect received and accepted an order to pay Eduardo Cestero $1,000. The presumption then arises that he had performed his obligation. The form was unimportant.

This, however, is not the case of a discharge or payment of an obligation. If technicalities are to be invoked section 1138 does not apply. No debtor is trying to discharge a pre-existing obligation. No payment, technically speaking, was attempted to be made. There is nothing in the Code that prevents the arising of the presumption, as is the ordinary course of business in all parts of the world, that a check has been honored. Paragraph 20 of section 102 of the Law of Evidence provides: "That the ordinary course of business has been followed."

The court below from the whole evidence had a right to be completely satisfied that Angel Cestero loaned Eduardo

Cestero $1,000. However, at the trial Angel Cestero said he loaned the money without interest, which seems natural. Therefore, the judgment should be modified to read: "With interest from the filing of the complaint," and as modified affirmed.

Chief Justice Del Toro and Justice Franco Soto dissented.

### DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I concur in the opinion that evidence of transactions with a deceased may be admitted, notwithstanding the prohibition established by the law, if proper objection is not made, and I am inclined to believe that that rule may be applied when the defendant fails to be present at the trial. The reason for my dissent is based on the fact that in my judgment the delivery of the money was not fully proved according to section 1138 of the Civil Code, which I consider applicable to this case. I, therefore, entertain the opinion that the most adequate and just decision to both parties would be to reverse the judgment and order a new trial.

### DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

In the complaint it is averred that in December, 1920, the plaintiff lent to Eduardo Cestero, the person from whom the right of the defendants is derived, the sum of $1,000, to be reimbursed the following year, with interest at 9 per cent annually. The averment was made in the complaint that Eduardo Cestero died leaving the debt unpaid, and the action being brought against his heirs, the question of the incompetency of plaintiff Angel Cestero as a witness in the case is raised by the appellants, who invoke in support of their contention section 3 of the Act of March 10, 1904, which provides that neither shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party, and the provisions of this section shall ex-

tend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

The appellants were not present at the trial and Angel Cestero was called to testify, in his own behalf, stating substantially that in 1921 he lent his brother Eduardo Cestero the sum of $1,000 without interest to be reimbursed to him as soon as he sold, some farms located at Bayamón; that he delivered the money through his intimate friend Rafael Ramírez, who made the payment by means of a check; that Eduardo Cestero owned a farm at Pueblo Viejo and said to him that as soon as he sold it he would pay him, and that he did sell it, but did not pay him. And witness Rafael Ramírez said that in 1921 he received from Angel Cestero $1,000 to deliver to his brother Eduardo; that he deposited the money in the Banco Comercial and handed a check to Eduardo Cestero for the said amount.

It would seem useless to say that as the plaintiff stated that he lent the money through a third person, it is not necessary that we examine the sufficiency of his testimony in the light of the provision invoked by the appellants and which establishes the incompetency of a party to testify against the other as to any transaction with, or statement by, the decedent, but only to examine closely its effects in accordance with the general principles of evidence, inasmuch as in some other of the errors assigned the insufficiency of the evidence is maintained.

It is true that, as the trial was held in the absence of the appellants, there was no objection to the evidence thus introduced. However, it is not a question here of hearsay evidence, but of evidence which is legally insufficient, neither the absence of the defendants at the trial nor the omission of any objection to it being enough to cure its insufficiency or its illegality.

"It does not necessarily follow that the omission to object to testimony is a concession that it is competent. Where evidence is

against the law, the silence of the opposing party does not cure its illegality, and the court is bound, mero motu, to treat it as having no validity. Moreover, the court may properly exclude such evidence without any objection being made; and the ruling of a trial court, excluding' testimony, will be sustained if its introduction was improper, although counsel do not state the correct grounds of objection, provided the correct grounds, if stated, could not have been obviated.'' 10 Cal. Jur. 822.

As the delivery of the money depended on the issuance of a check and this is one of the documents referred to in section 1138 of the Civil Code, which produces the effect of payment only when collected or cashed, the testimony of the witness had a legal aspect in that respect, and it would seem more natural that the check itself should have been produced, as this paper must have come back to Ramírez after being cashed at the bank. The witness simply said that he did not have the check because at that time he was living at Bayamón and afterwards he went to Río Grande. There was nothing clear in reference to the document's being lost or destroyed, so that credit may or may not be given to his other statements. Evidence is governed by its rules, and one of its effects when the same are not complied with is contained in section 162 of the Law of Evidence, which reads:

"In civil cases the affirmative of the issue must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of proof.

"Proof is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and, therefore, if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

The failure to produce the check in this case should have been considered fatal to the plaintiff. The best evidence appears to have been suppressed without any legal excuse for not producing it.

"The rule requiring the production of the best evidence, of which the case in its nature is susceptible, is adopted for the prevention of fraud, and is declared to be essential to the pure administration of justice . . . By requiring the production of the best evidence, the law denies the admissibility of that evidence which is merely substitutionary in its nature, when the original evidence can be had." *Anglo-American Packing, etc., Co.* v. *Cannon,* 31 Fed. 313, 314.

"It is said in the books, that the ground of the rule is a suspicion of fraud, and if there is better evidence of the fact, which is withheld, a presumption arises that the party has some secret or sinister motive in not producing it. Rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they are designed." *U. S.* v. *Reyburn,* 6 Pet. (U.S.) 352, 367, 8 L. Ed. 424.

I believe it would be subversive of the sound principles of justice that it should become an established rule that in the absence of counsel for a defendant the courts show excessive lenity in the admission of inadmissible evidence. I have not found any authority that would uphold such a theory, nor do I expect there is any. The Supreme Court of California, on the contrary, in the case of *McGuire* v. *Drew,* 83 Cal. 225, establishes as a more sound and healthy rule the following: "It is the duty of the trial court, when only one side is represented at the trial, to insist upon the best evidence attainable."

I insist that if the plaintiff did not limit himself to saying that he lent his brother $1,000, and that that sum had not been paid back to him, but went on to explain that he availed himself of a third person, who issued a check for the delivery of the money, none of these statements imply the meaning of "ultimate facts." These should not be confounded with the elements of evidence to establish or disprove the facts in controversy. The "ultimate facts" are defined by Bouvier's Law Dictionary, vol. 2, p. 1152, thus: "Facts in issue as opposed to probative or evidential facts, the latter being such as serve to establish or disprove the issue."

A check, on its face, is a mere order to another to pay a certain sum of money, and although by its terms it does not decide the question of whether the money was in payment of a debt or as a loan, at any rate it involves the delivery of money. If to the effect of the payment of a debt the delivery of a check is conditional on its payment, the debt not being paid until the check is collected or cashed, the same principle applies to a loan. The delivery of the money remains at issue, or the loan is not made until the check is cashed by the debtor. And this is what has not been proved in this case. I consider it a bit of subtlety to say that technically section 1138 of the Civil Code would not be applicable to the delivery of a check given as involving the amount of a loan, but only to the extinction of an obligation by its payment. But where there is identical reason there should be identical legal provision.

For the reasons stated the judgment appealed from should have been reversed and the complaint dismissed.